O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| S. Eagle | Not Reported | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: | | |

**Proceedings:**   IN CHAMBERS (No Proceedings Held)

## I.   INTRODUCTION

Plaintiff Robert Bell brings this action under 42 U.S.C. § 1983 against Defendants City of Los Angeles, Detective Dennis Derr, and Officer Cynthia Torres for false arrest, unlawful search of his vehicle, malicious prosecution, and unlawful detention.[1] Presently before the Court is Defendants' motion for partial summary judgment.[2] Defendants seek summary judgment on all claims with respect to the City of Los Angeles. With regard to the individual defendants, Defendants seek summary adjudication on all claims except for the unlawful detention claim. The individual defendants assert that they did not violate Plaintiff's constitutional rights and, in the alternative, that they are entitled to qualified immunity.

For the reasons stated below, the Court GRANTS Defendants' motion on all claims against the City of Los Angeles. In addition, with respect to the individual Defendants, the Court GRANTS Defendants' motion as to the false arrest and malicious prosecution claims, but DENIES the motion as to the unlawful search claim.

Also before the Court is Plaintiff's request to present newly obtained evidence in

---

[1] Bell's complaint also asserted a claim for unlawful search of his home and garage, but Bell has subsequently abandoned this claim. Pl.'s Revised Opposition at 13–14.

[2] Dkt. 25.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

opposition to the defense's motion for summary judgment.[3]  For the reasons stated below, the Court GRANTS Plaintiff's request, but finds that the new evidence does not affect Defendants' motion for partial summary judgment.

## II.    FACTS[4]

On May 6, 2008, Los Angeles Police Department officers Abraham Estrada and Kevin Stephan received a call to investigate an attempted kidnapping.  Defendants' Statement of Uncontroverted Facts (SUF) ¶ 1.  The officers subsequently met Nicole Holtmann, a high school student, and her father Stephen Holtmann.  SUF ¶¶ 2, 19.

### A.    Nicole Holtmann's First Interview

Nicole Holtmann gave the officers the following account.  At 3:45 pm that day, while she was walking in the area of Victory and Balboa Boulevards in Van Nuys, she noticed a black Mercedes Benz following her.  SUF ¶ 3.  The Mercedes had dark tinted windows and made her afraid to return home.  SUF ¶ 4.  Ms. Holtmann boarded the Orange Line bus and took it to Sepulveda Boulevard and Busway.  SUF ¶ 5.  After she alighted, Ms. Holtmann began walking south on Sepulveda.  SUF ¶ 6.  She noticed that the black Mercedes was still following her.  SUF ¶ 7.

The black Mercedes pulled into a parking lot and the driver rolled down his window.  SUF ¶ 8.  He asked Ms. Holtmann where she was going, if he could give her a ride, and for her name and telephone number.  SUF ¶¶ 9, 10. Ms. Holtmann gave the driver a false name, turned around, and began walking north on Sepulveda.  SUF ¶ 10.  The driver then drove through the parking lot, pulled in front of Ms. Holtmann, and blocked her path.  SUF ¶ 11.  He exited the vehicle and then used his right hand to grab her left arm.  SUF ¶ 12.  Ms. Holtmann panicked, pulled away, and ran north on Sepulveda.  SUF ¶ 13.  After telling officer Estrada and Stephan what happened, Ms. Holtmann described the driver.  SUF ¶ 16, 17.

---

[3] Dkt. 68.

[4] Unless otherwise noted, the following facts are undisputed.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

### B. Nicole Holtmann's Second Interview

As the police soon discovered, Ms. Holtmann's account of the incident was not entirely accurate. Another LAPD officer, Detective Eum, read Officer Estrada's report and decided to conduct another interview with Ms. Holtmann. SUF ¶ 19. On May, 7, 2008, the day after Ms. Holtmann had first spoken to the police, Detectives Eum and Derr interviewed Ms. Holtmann at her high school. Ana Martinez, a high school counselor, was initially present at this interview. SUF ¶ 20. During the interview, Ms. Holtmann gave the same account as she had given previously. SUF ¶ 21. But upon noticing some discrepancies related to the location of the incident, Detective Eum confronted Ms. Holtmann with the inconsistencies in her story. SUF ¶ 22–24. Ms. Holtmann then asked her counselor, Ms. Martinez, to leave the room. SUF ¶ 24.

After the counselor had left the room, Ms. Holtmann explained the discrepancies in her story. SUF ¶ 27. In her previous story Ms. Holtmann had stated that she first saw the black Mercedes near the intersection of Victory and Balboa boulevards—close to her school. SUF ¶ 3. In fact, Ms. Holtmann admitted, she had cut school that day and gone to her boyfriend's house. SUF ¶ 30. She first noticed the black Mercedes as she was walking north on Sepulveda towards the busway. SUF ¶ 31.

As she was walking north on Sepulveda, the driver of the Mercedes pulled up next to Ms. Holtmann and asked her for name and telephone number, and he offered to give her a ride. SUF ¶ 33. She kept walking north and ignored the driver. SUF ¶ 34. The driver then pulled into a driveway and parked his car in front of her, blocking her path. SUF ¶ 35. In her previous story, Ms. Holtmann had said that the driver exited the car. This time, she explained to the Detectives that the driver remained in the car and reached across the front seat to open the front passenger-side door. SUF ¶ 37. The driver asked for Ms. Holtmann's name and number a second time. SUF ¶ 38. Next, the driver attempted to grab Ms. Holtmann's arm to try to pull her into the car, but was only able to get her sleeve. SUF ¶ 40. Ms. Holtmann ran across Sepulveda Boulevard to a bus stop on the opposite side of the street, where she noticed her friend Denis Semendyayev.

### C. Other Interviews

The detectives interviewed Semendyayev. SUF ¶ 59. He confirmed that he was

Case 2:10-cv-05823-AHM -JCG Document 81 Filed 12/20/11 Page 4 of 16 Page ID #:987

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

standing at the Sepulveda bus stop when Ms. Holtmann ran up to him. SUF ¶ 62. She was panicked, and she told him that a man was following her and asking for her telephone number. SUF ¶ 63. She kept looking back to see if the person was still following her. SUF ¶ 63.

The detectives also interviewed Ms. Holtmann's boyfriend, Daniel Ridgeley. SUF ¶ 6. He confirmed that Ms. Holtmann skipped school and went to his house on the morning of the incident. SUF ¶ 44. She left his house at 3:30 pm, and he received a call from her twenty minutes later. SUF ¶ 47. Ms. Holtmann told Ridgeley that a man was following her and that he had called her "hot" and asked her to get in his car. SUF ¶ 50 She also gave him license plate numbers to write down. SUF ¶ 51. Ridgeley gave the license plate numbers to the detectives. SUF ¶ 52.

In addition, the detectives interviewed Daniel Ridgeley's mother, Adrian Ridgeley. SUF ¶ 56. She confirmed that she spoke with Ms. Holtmann directly after the incident, and that Ms. Holtmann told her that "some guy" in a black Mercedes asked for her phone number and tried to get her in his car. SUF ¶ 56.

### D. The Police Locate Bell

The detectives ran various combinations of the license plate numbers provided by Daniel Ridgeley. SUF ¶ 53. One of the license plate combinations was a close match to Plaintiff Robert Bell. SUF ¶ 54. Bell matched the general description provided by Ms. Holtmann, lived in the Van Nuys area, and had previous arrests for prostitution. SUF ¶ 54.

At the behest of the detectives, Ms. Holtmann worked with a composite artist to create a drawing of the driver. SUF ¶ 57. When the drawing was complete, Detective Eum noticed that it was similar to Bell's driver's license photograph. SUF ¶ 57. Afterwards, Ms. Holtmann reviewed a photographic lineup and identified Bell's photo out of a six-photo lineup. SUF ¶ 57.

Detectives Derr and Torres visited Bell's home on May 28, 2008, and Bell answered the door. SUF ¶¶ 69–71. According to Bell, the detectives initially had their guns drawn, but they holstered their weapons as soon as Bell confirmed his identity.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

SUF ¶ 97–99. The officers did not have a search warrant or an arrest warrant. SUF ¶ 72. They informed Bell that they were performing an investigation that involved his car and asked if they could see it. SUF ¶ 75. Bell agreed to show the officers his car. SUF ¶ 76. Specifically, Bell stated, "Well, hey, I'll open the garage and I can . . . you could . . . I can tell you what . . . the car looks like." SUF ¶ 101. He went through his home and opened the garage from the inside while the officers waited outside. SUF ¶ 76.

Bell and the officers disagree as to whether the officers searched the interior of his car. According to Bell, once he opened the garage door he walked into the driveway where the officers handcuffed him. SUF ¶ 104. They made him face the street and did not allow him to look back at the garage. SUF ¶ 105. The search lasted over an hour, according to Bell. SUF ¶ 111. Bell believes the officers searched the interior of his car because he heard his car door open and because one of the officers took a photograph that appears to be taken from inside the car. Bell Depo. 56:10-12[5]; Derr Decl. Ex. A-1. The officers admit that they took photographs of Bell's car, but they deny searching the interior of the car. SUF ¶¶ 78–79. Plaintiff disputes the officers' claim that they did not search the interior of the car. SGI ¶ 78.

The officers gave Bell an opportunity to provide his account of the incident with Ms. Holtmann. SUF ¶ 80. Bell claimed that he was turning into a parking lot on Sepulveda when a car in front of him stopped and blocked the entrance. SUF ¶ 85. He honked his horn at the car, but it did not move. SUF ¶¶ 86–87. After some more honking, Ms. Holtmann exited the car. SUF ¶ 87. She used a profane gesture—"the middle finger"—and screamed profanities at him. SUF ¶ 88. Bell responded with his own middle finger. SUF ¶ 89. After Bell and Holtmann exchanged a few more profanities, Ms. Holtmann walked away and Bell parked and went shopping. SUF ¶ 90. Bell denied rolling down his windows, opening his door, or touching Ms. Holtmann. SUF ¶ 92.

After Bell gave the officers his side of the story, they arrested him for violating California Penal Code 209(b)(1). California Penal Code § 209(b)(1) provides that "[a]ny person who kidnaps or carries away any individual to commit robbery, rape, spousal rape, oral copulation, sodomy . . . shall be punished by imprisonment in the state prison for life

---

[5] Dkt. 45-1.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

with the possibility of parole." In addition, California Penal Code § 664 prescribes the punishment for an attempt to commit a crime.

On May 12, 2008, the District Attorney filed a complaint alleging a violation of Penal Code § 664–209(b)(1). SUF ¶ 132. Subsequently, on August 12, 2008, the district attorney amended the complaint to add a misdemeanor violation of Penal Code § 647(b), for soliciting an act of prostitution. SUF ¶ 132. Bell pled no contest to the § 647(b) violation and the remaining charges were dismissed. SUF ¶ 132.

### III.   LEGAL STANDARD

#### A.   Summary Judgment

Federal Rule of Civil Procedure 56 provides for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. " The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999)

O

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

(citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the opposing party if that party does not present such specific facts. *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. *Id*.; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### B. Qualified Immunity

Public officials, including police officers, are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). This is the doctrine of qualified immunity, which, where applicable, is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsythe,* 472 U.S. 511, 526,105 S.Ct. 2806 (1985). If the asserted constitutional right was not clear, the officials cannot be liable.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court stated that in ruling on a summary judgment motion based on qualified immunity, the court must conduct a two-step inquiry. First, the Court must ask: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. Second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the

O

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

right was clearly established" when viewed in the context of the case. *Id.* Although it is defendants who interpose the defense or privilege of qualified immunity, the plaintiff has the burden of proof on these two elements. *See Jeffers v. Gomez*, 267 F.3d 895, 916 (9th Cir. 2001); *Bernstein v. Lopez*, 321 F.3d 903, 905 (9th Cir. 2003).

In *Pearson v. Callahan*, the Supreme Court revisited *Saucier* and held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 129 S.Ct. 808, 818 (2009). The Supreme Court noted that the *Saucier* protocol could be beneficial when it would be difficult to decide whether a right is clearly established without deciding precisely what the right is; when it would be valuable to establish constitutional precedent on questions that do not frequently arise in cases in which a qualified immunity defense is unavailable; and when few judicial resources would be conserved by considering only the "clearly established" prong. *Id.* In all cases, however, district courts must consider the price that comes with the *Saucier* procedure, particularly when "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.* The scales weigh against considering the first factor when the constitutional question is so fact-bound that a decision would provide little guidance for future cases; when a higher court will soon decide the constitutional question; when a constitutional decision rests on an uncertain interpretation of state law; when the precise factual basis for the plaintiff's claim is hard to identify; and when briefing of constitutional questions is "woefully inadequate." *Id.* at 818-19.

For a right to be "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (citation deleted). Supreme Court and Ninth Circuit decisions make clear that the "clearly established" inquiry must be undertaken in a context-specific manner. *Id.*; *Brewster v. Bd. of Educ. of the Lynwood Unified School Dist.*, 149 F.3d 971, 978 (9th Cir. 1998). Thus, "[i]n assessing claims of qualified immunity, reviewing courts must not view constitutional rights in the abstract but rather 'in a more particularized, and hence more relevant, sense.'" *Brewster*, 149 F.3d at 978 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "If officers of

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

reasonable competence could disagree on the issue [whether a chosen course of action is constitutional], immunity should be recognized." *Brewster*, 149 F.3d at 977 (*quoting Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)). Put more simply, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202.

The "qualified immunity analysis is 'essentially legal' and is appropriately made on summary judgment where the underlying facts are undisputed." *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002) (citation omitted).

## IV. DISCUSSION

### A. Bell's Monell Claims Are Unsupported

Local municipalities are "persons" under § 1983 and may therefore be held liable for constitutional deprivations. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978) A municipality may not be held liable for the torts of its officers under a theory of respondeat superior. *Id.* at 609–691. Instead, a municipality is liable only where its official policy, custom, or practice is the "moving force" behind a constitutional violation. *Id.*

Plaintiff does not present any evidence whatsoever to show that the Los Angeles Police Department or the City of Los Angeles had a policy, custom, or practice that caused a violation of his rights. As a result, there are no genuine disputes of material fact, and Defendant City of Los Angeles is entitled to summary judgment on all of Plaintiff's claims.

### B. Bell's Arrest Was Supported by Probable Cause

A warrantless arrest requires probable cause. *See Michigan v. Summers*, 452 U.S. 692, 700 (1981). Arresting officers have probable cause when they "have knowledge or reasonable trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). In making a probable cause

O

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

determination, a court must consider the totality of the circumstances known to the arresting officers. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

"Probable cause is an objective standard." *Lopez*, 482 F.3d at 1072. The arresting officers' subjective intention . . . is immaterial in judging whether their actions were reasonable . . . ." However, officers are entitled to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Hart v. Parks*, 450 F.3d 1059, 1067 (9th Cir. 2006) (internal citations omitted). "The fact that other inferences are possible does not mean that there is a triable issue of fact as to whether there was probable cause. *Id.*

In this case, a teenage girl told the police that Bell had followed her in his car, told her she was hot, repeatedly asked her for her name and phone number, and told her to get in his car. She also told the police that he blocked her pathway with his car, reached across the passenger seat of his car, and tried to pull her in.

Ms. Holtmann was able to provide artists with a sketch that resembled Bell, and she was able to pick Bell out of a photo lineup. Bell's license plate numbers were a close match to the numbers recorded by Ms. Holtmann, and his car was a black Mercedes, which fit the description that Ms. Holtmann gave the police.

The police also interviewed three individuals who spoke with Ms. Holtmann soon after the incident with Bell. They informed the police that Ms. Holtmann had spoken to them about a man in a black Mercedes who had followed her, called her hot, and tried to get her in his car.

When given the opportunity to explain his side of the story, Bell did not deny that he had interacted with Ms. Holtmann. According to Bell, his interaction with Ms. Holtmann consisted of a short exchange of insults. The police also knew that Bell had multiple arrests for prostitution.

The undisputed facts show that, based on the totality of the circumstances, the police had probable cause to arrest Bell for attempted kidnapping or attempted kidnapping with the intent to rape. They could reasonably have believed that Bell had

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

tried to force Ms. Holtmann into his car in order to rape her.

The fact that there were minor inconsistencies in Ms. Holtmann's account of the incident does not negate the officers' probable cause. The police are entitled to draw on their experiences to draw inferences about the cumulative evidence. *Hart*, 450 F.3d at 1067. Here, the police were entitled to infer that Ms. Holtmann lied about the location of the incident because she did not want her parents to find out that she had ditched school and gone to her boyfriend's house instead, not because of any falsehood in the fundamental accusation against Bell.

Because the undisputed material facts show that the police had probable cause to arrest Plaintiff, the individual defendants are entitled to summary adjudication on Plaintiff's false arrest claim.

### C. Bell's Prosecution Was Supported by Probable Cause

To prevail on a claim of malicious prosecution, Bell must show that the officers "prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). As explained in the previous section, the undisputed facts show that the police had probable cause. Therefore, the individual defendants are entitled to summary adjudication on Bell's malicious prosecution claim.

### D. Material Disputes of Fact Preclude Summary Adjudication on Bell's Search Claim

Bell no longer claims that the officers entered his garage illegally. Pl.'s Revised Opp. at 14. Accordingly, his illegal search claim is no longer based on the fact that the officers entered his garage, but on his allegation that they searched the interior of the car.

Intrusion into the interior of a car can constitute a search under the Fourth Amendment. *New York v. Class*, 475 U.S. 106, 116 (1986). The Fourth Amendment, however, "does not proscribe all state-initiated searches and seizures; it merely proscribes

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). Accordingly, consensual searches do not violate the Fourth Amendment because it is reasonable for law enforcement officers to conduct a search after obtaining consent. *Id.* at 250–51. "It is the government's burden to prove that the consent was freely and voluntarily given." *United States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2004).

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251. "It is a violation of a suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given." *United States v. McWeeney*, 454 F.3d 1030, 1034 (9th Cir. 2006).

In this case, summary judgment is inappropriate because there is a genuine issue of material fact as to whether the officers searched the interior of Bell's car. Defendants state that they did not search the interior of Bell's car. SUF ¶ 78. In opposition, Bell provides two pieces of evidence—his deposition testimony that he heard the officers open his car door and a photograph produced by Defendants that appears to have been taken from the inside of Bell's car. Bell Depo. 56:10-12; Derr Decl. Ex. A-1. A reasonable juror could believe Bell's testimony and could find that the photograph was taken from inside Bell's car. From this evidence, a jury could reasonably infer that the officers entered and searched Bell's car. Even if this was done after they arrested Bell, Defendants do not claim it was incident to his arrest.

Defendants contend that even if the officers searched Bell's car, the search was reasonable because Bell consented. According to Bell, his statement to the officers was "[w]ell, hey, I'll open the garage and I can . . . you could . . . I can tell you what . . . the car looks like." SUF ¶ 101. Bell's statement was in response to Detective Derr's request to see the car. SUF ¶ 75. A reasonable person would not understand this statement to authorize a search of the interior of a vehicle, but merely an invitation to look at the vehicle.

Defendants cite *United States v. Sierra-Hernandez*, 582 F.2d 760, 764 (9th Cir. 1978) for the proposition that Bell's failure to object to "the continuation of a vehicle search after giving general consent to search 'is properly considered as an indication that

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

the search was within the scope of the initial consent.'" But there are numerous problems with this argument.

First, in *Sierra-Hernandez* the officer was given permission to "look inside [the suspect's] truck," and he searched the cab, cargo area, and hood of the truck. The defendant later argued that the officer exceeded the scope of consent by searching inside the hood. Under these circumstances the Ninth Circuit found that the lower court's decision to uphold the search was not clearly erroneous.

Bell's statement in this case differs from the broad authorization the officers received in *Sierra-Hernandez*. An officer can reasonably interpret an authorization to look "inside" a truck as general consent to a search of the truck. But a reasonable person would not interpret Bell's statement as a grant of general consent to enter his vehicle.

Second, according to Bell, the officers placed him in a situation where he was unable to monitor the search. Bell states that during the search of his car and garage the officers handcuffed him, turned him away from the garage, and ordered him not to look back towards the garage. SUF ¶ 104–105. Specifically the officers allegedly said, "Face straight ahead. Don't look back . . . Don't look sideways." SUF ¶ 105. Bell estimates that he was in this position for over an hour. SUF ¶ 111. Under these circumstances, his failure to object to a search he could not even see is hardly an indication of consent.

Third, in *McWeeney*, the Ninth Circuit found that a suspect's consent may be negated where the police coerce him into believing he could not withdraw his consent. *McWeeney*, 454 F.3d at 1036. The facts in that case are similar to the facts here. There, the police searched the trunk of a car while the two defendants were ordered to face away from the car. *Id.* at 1033. When one suspect looked back an officer ordered him to look forward. *Id.* The defendants moved to exclude the fruits of the search, and the government justified the search based on the defendants' consent. *Id.* The Ninth Circuit remanded the case to the district court to determine as a factual matter whether the officers "created a setting in which the reasonable person would believe that he or she had no authority to limit or withdraw their consent." *Id.* at 1037 The Court held that, "if the officers did coerce [the suspects] into believing that they had no authority to withdraw their consent, the officers violated [their] Fourth Amendment rights and the search was illegal." *Id.* at 1036.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

In this case, Bell alleges that he was handcuffed and told to face away from the garage. He was kept in that position for over an hour. When he asked "What's this about?" the officers said "We're not doing anything." SUF ¶ 109. Given these facts, the government has failed to meet its burden to prove that Bell consented to the search of his car.

### E. The Individual Defendants Are Not Entitled to Qualified Immunity for the Vehicle Search

The individual Defendants argue that they are shielded by the doctrine of qualified immunity because "no reasonable officer could believe that he was not provided consent to search the car." Reply at 6.

"An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Pearson v. Callahan*, 555 U.S. 223, 243–44 (2009). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.*

At the time of Bell's arrest in 2008, it was clearly established that the government violates the Fourth Amendment when a consensual search exceeds the scope of the consent given. *United States v. McWeeney*, 454 F.3d 1030, 1034 (9th Cir. 2006). In this case it is necessary for the jury to conclude whether it was reasonable for these officers to have believed that Bell had authorized a search of the interior of his car. Therefore, the individual officers are not shielded by the doctrine of qualified immunity.

### F. Plaintiff's New Evidence Does Not Affect Defendants' Motion

Rule 56(e) gives this Court discretion to permit a litigant to supplement the factual record in the context of a motion for summary judgment. *Betz v. Trainer Wortham & Co.*, 610 F.3d 1169, 1171 (9th Cir. 2010). Bell seeks leave to supplement the record with excerpts from his police interrogation. This request is granted, but the proposed evidence does not affect the resolution of Defendants' motion for summary judgment.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

Bell seeks to introduce the excerpts from his interrogation in an attempt to show that the police were unsure of what Bell's intentions were during his encounter with Ms. Holtmann and that they maliciously booked plaintiff for attempted kidnapping when he refused to provide them the answers they wanted. Request at 3. For example, according to Bell, during the course of the interrogation Detective Derr asked Bell "why he did it." Barbee Nov. 4, 2011 Decl. at 3. Bell argues that this shows that the police were unsure of his intentions towards Ms. Holtmann. *Id.* Similarly, Bell claims that Detective Derr asked him what he was thinking when he interacted with Ms. Holtmann. *Id.* Again, Bell claims that this shows that the detectives were unsure of his intentions. *Id.* This argument makes no sense. These questions were standard interrogation questions and also could be viewed as having been rhetorical. In any event, this evidence does not affect the outcome of Defendants' motion for partial summary judgment because probable cause is an objective legal standard—the officers' subjective beliefs are irrelevant. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Regardless of the officers' subjective beliefs, the undisputed facts show that the police had probable cause to arrest Bell.

## V. CONCLUSION

The Court GRANTS summary judgment in favor of the City of Los Angeles on all claims asserted against it. Furthermore, the Court GRANTS summary adjudication in favor of the individual defendants on the unlawful arrest and malicious prosecution claims, but DENIES summary adjudication on the unlawful vehicle search claim. Finally, the Court GRANTS Plaintiff's request to present additional evidence, but finds that this evidence does not affect the outcome of Defendants' motion for partial summary judgment.

The Court ORDERS the parties to conduct a direct and good faith negotiation to settle or resolve this case, for it appears that even if Plaintiff prevails on the unlawful detention (display of weaponry) and unlawful vehicle search claims at trial, which is doubtful, he would likely recover nominal damages at most. The settlement effort must precede the January 9, 2012 Pre-Trial Conference.

No hearing is required. Fed. R. Civ. P. 78; Local Rule 7-15.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5823 AHM (JCGx) | Date | December 20, 2011 |
|---|---|---|---|
| Title | BELL v. CITY OF LOS ANGELES, et al. | | |

|  | : |
|---|---|
| Initials of Preparer | se |